J-A16023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BOCHETTO & LENTZ, P.C. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| A. HAROLD DATZ, ESQUIRE, AND A. HAROLD DATZ, P.C. | |
| Appellee | No. 3165 EDA 2014 |

Appeal from the Order October 16, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 03044 September Term, 2010

BEFORE:  LAZARUS, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED FEBRUARY 05, 2016**

Bochetto & Lentz, P.C. ("Bochetto") appeals from an order granting summary judgment in favor of A. Harold Datz and A. Harold Datz, P.C. ("Datz").[1]  After our review, we affirm.

This Court has previously outlined the factual and procedural history of this case:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Datz filed an application to strike Bochetto's Statement of the Case and Summary of the Argument pursuant to Pa.R.A.P. 2117 and 2118, respectively, alleging they contained "scandalous and impertinent material and argument included for the sole purpose of inflaming this Honorable Court and drawing attention away from the precise issues on appeal." Application to Strike, 4/21/15, at ¶ 2.  Bochetto filed an Answer.  Our review of this case is not hindered by the submissions before us.  Therefore, we deny Datz's application to strike.

[Bochetto] and [Datz] are competing civil litigation firms located in Philadelphia, Pennsylvania. From July 2005 until his termination in February of 2009, Scott Sigman, Esquire ["Sigman["]) was employed by [Bochetto] as an associate attorney.

The following facts are undisputed. In June of 2007, while employed by [Bochetto], Sigman was contacted by Jillene Pasternak [("Pasternak")] regarding representation for her slip and fall personal injury claim. At some point thereafter Sigman referred the Pasternak case to Datz. No written agreement of this referral exists; however, the record shows that Pasternak retained Datz, and Datz later confirmed to Sigman that he was "on the case."

In February of 2009, Sigman was fired from [Bochetto] based on allegations that he was secretly engaging in client representations and referrals without notifying [Bochetto] or receiving [Bochetto]'s consent. Shortly thereafter, on April 20, 2009, Pasternak's case was settled by Datz. [Datz] received 40 percent of the settlement proceeds, amounting to a combined fee of $86,000.00, from which Datz then gave Sigman a referral fee in the amount of $28,800.00 in a check dated April 30, 2009. This check was made out to Sigman at his home address.[1]

On September 27, 2010, [Bochetto] initiated this action by filing a praecipe for writ of summons. [On] October 19, 2010, [Bochetto] filed a civil complaint against Datz.[2]. After two sets of preliminary objections and an amended complaint, the causes of action remaining were tortious interference with prospective contractual relations, civil conspiracy to commit fraud, conversion, unjust enrichment, constructive trust, and aiding and abetting breach of fiduciary duty.

---

[1] The record reveals that [Datz] intended to mail the check to Sigman's home address, but Sigman picked it up in person. In his deposition, Datz claimed that he had requested Sigman's home address for [the firm's] "Christmas card" and "announcement list." However, Datz

---

[2] Bochetto did not name Sigman in this action.

> then admitted that the firm did not send out Christmas cards.
>
> During the course of discovery, the following relevant deposition testimony was taken and affidavits were produced. Sigman testified that, following his June 2007 discussion with Pasternak, he asked [] George Bochetto, Esquire ([a principal of Bochetto]) whether Sigman could keep Pasternak's case because (pursuant to his employment agreement with [Bochetto]) he would be entitled to one-third of the attorney fee and would get to learn about personal injury cases. According to Sigman, [George Bochetto] told him "to get rid" of the case because Bochetto did not want to handle slip and falls cases. Datz testified that he asked Sigman why [Bochetto] was not keeping Pasternak's case, to which Sigman responded that [George Bochetto] had told him that [Bochetto] was not interested in handling slip and fall cases, and thus, to get rid of the case. Conversely, in his deposition, [George Bochetto] adamantly denied knowledge of a potential client named Pasternak and further denied having any conversation with Sigman regarding referral of the Pasternak case. [George Bochetto] further testified that Datz did not discuss the Pasternak referral with him.
>
> On November 21, 2011, after the close of discovery, [Datz] filed a motion for summary judgment. On April 27, 2012, the trial court issued an order granting summary judgment in favor of [Datz] as to all six counts of [Bochetto's] complaint.

*Bochetto & Lentz v. Datz*, 82 A.3d 1079 (Pa. Super. 2013) (unpublished memorandum), at 2-4 (internal citations, quotation marks, and certain footnotes deleted). Bochetto appealed and a divided panel of this Court, finding genuine issues of fact precluded entry of summary judgment, reversed and remanded for further proceedings. *Id.* at 5-16.

In late June of 2011, while Bochetto's claims against Datz were pending, Sigman filed a lawsuit against Bochetto in Philadelphia County, seeking recovery of unpaid fees and commissions. Bochetto filed preliminary objections, which the trial court granted, finding Sigman's claims

were subject to compulsory arbitration. The court ordered Sigman's claims against Bochetto to proceed in binding arbitration. Thereafter, Bochetto filed a counterclaim against Sigman alleging breach of contract, breach of fiduciary duty, fraud, and interference with contractual relations. Bochetto requested that the commissions owed to Sigman be offset by the fees Bochetto lost because of Sigman's improper referral of the Pasternak case to Datz. The arbitrator agreed with this claim and determined further that if Sigman had not referred the Pasternak case, Bochetto would have obtained a fee of $86,400.00 (the fee recovered by Datz). The arbitrator also found that Bochetto would have expended $43,200.00 in litigating the Pasternak case. Thus, the arbitrator awarded Bochetto a $43,200.00 setoff against the fees he found Bochetto owed Sigman.

Bochetto filed a petition to vacate the arbitrator's award, claiming it contravened public policy. The Court of Common Pleas of Philadelphia County denied that petition and this Court affirmed. *See Sigman v. Bochetto*, 105 A.3d 38 (Pa. Super. 2014) (unpublished memorandum), *appeal denied*, 112 A.3d 654 (Pa. 2015).

Following this Court's 2013 order remanding this matter for further proceedings, Datz again filed a motion for summary judgment, this time arguing that the arbitrator's award to Bochetto for lost fees relating to the Pasternak case barred Bochetto's present claims. The trial court agreed and, on October 16, 2014, entered summary judgment in favor of Datz. Bochetto filed this appeal, raising five issues for our review:

1. Whether the trial court erred in distinguishing **Richette v. Solomon**, [187 A.2d 910 (Pa. 1963)], where the record contained genuinely disputed facts over material issues, including conflicting expert opinion evidence, as to the purposeful conduct of [Datz] in foisting an inadequate settlement on an unsuspecting lay client in the Pasternak matter, grossly undervaluing the claims so as to avoid having to file a public complaint, which enabled Datz to obtain a quick, easy and non-public settlement to line his own pockets and conceal the case and the fees from [Bochetto], facts which are virtually identical to the controlling precedent of **Richette**?

2. Whether the trial court erred in distinguishing **Richette** where the trial court invaded the province of the jury in finding [Bochetto's] damages claim against Datz to be "speculative" as a matter of law even though [Bochetto] presented very specific and non-speculative evidence as to its damages claim, including the very severe and permanent physical injuries to the client in the Pasternak matter, as well as expert opinion evidence detailing her injuries and damages?

3. Whether the trial court erred in finding that [Bochetto] had been made whole, where Datz was liable to [Bochetto] for entirely different conduct than Sigman and under different theories of liability with different measures of damages than any that applied to Sigman?

4. Whether the trial court erred in finding that [Bochetto's] suit contravened public policy, where the trial court confused the damages sought by [Bochetto] in this matter (the fee-only portion of Datz's inadequate settlement of a case acquired through malfeasance) with the damages of the potential plaintiff in the Pasternak matter?

5. Whether – separate and apart from [Bochetto's] right to recover compensatory damages against Datz – the trial court erred in failing to find [Bochetto] was entitled to recover punitive damages against Datz for his outrageous bad acts in conspiring with

> his joint tortfeasor Sigman in stealing [Bochetto's] potential client?

Appellant's Brief, at 4-5.

When reviewing an order granting summary judgment, we must determine whether the trial court abused its discretion or committed an error of law, and our scope of review is plenary. *Petrina v. Allied Glove Corp.*, 46 A.3d 795, 797 (Pa. Super. 2012).

> [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party. . . . Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

*Id.* at 797–98 (Pa. Super. 2012) (internal citations omitted).

After a review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Gary Glazer, we conclude Bochetto's issues warrant no relief. The trial court properly disposes of the claims presented. *See* Trial Court Opinion and Order, filed 10/16/14, at 3-8 (trial court determined *Richette* did not apply because there was no established attorney-client relationship between Bochetto and Pasternak; Bochetto was compensated and made whole as a result of the improper referral and its claim that damages were inadequate is based on

speculation).[3]  Accordingly, we affirm the order granting summary judgment in favor of Datz based on Judge Glazer's opinion, and we direct the parties to attach a copy of that opinion in the event of further proceedings.

Order affirmed.

Judge Platt joins the Memorandum.

Judge Olson files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/5/2016

---

[3] That the facts presented here do not rise to the level warranting punitive damages is implicit in the trial court's grant of summary judgment.

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

| | | |
|---|---|---|
| BOCHETTO & LENTZ, P.C. | : | SEPTEMBER TERM, 2010 |
| Plaintiff | : | NO. 03044 |
| v. | : | COMMERCE PROGRAM |
| A. HAROLD DATZ, ESQUIRE, and | : | CONTROL NO. 14082207 |
| A. HAROLD DATZ, P.C. | : | |
| Defendants | : | |

OPINION

GLAZER, J.                                                                October 16, 2014

Before the court is the motion for summary judgment of defendants, A. Harold Datz,

Esquire and A. Harold Datz, P.C. ("Datz"). For the reasons set forth below, defendants' motion

is granted.

FACTS AND PROCEDURAL BACKGROUND

The underlying facts of this prolonged dispute are set forth in the Superior Court's

opinion dated July 26, 2013. The factual statement contained therein is hereby incorporated by

reference. The Superior Court, which reversed the decision of the Honorable Arnold L. New,

held that there were genuine issues of material fact on the various claims against defendants.

However, neither the trial court nor the Superior Court addressed the issue of damages.

The current action is a companion of the related suit Scott P. Sigman v. Bochetto & Lentz

(hereinafter referred to as the "Sigman action"). Sigman had been an associate at Bochetto &

Lentz (hereinafter referred to as "B&L") until he was terminated in 2009. During his term of

1

employment, Sigman was contacted by Jilene Pasternak who inquired about representation for her personal injury claim. Rather than acting in accordance with proper procedures, Sigman, who owed a duty of loyalty to his employer, instead surreptitiously referred the Pasternak matter to A. Harold Datz, Esquire. Datz subsequently represented Pasternak, and reached a settlement of $216,000. Datz received $86,400 based on his contingent fee with Pasternak, $28,800 of which he gave to Sigman as a referral fee. Having learned of the improper referral by Sigman, along with allegations of other impermissible referrals, B&L fired Sigman. On September 27, 2010, B&L commenced this action to recover damages arising from the Pasternak referral.

On or around June 27, 2011, Sigman filed suit against B&L for breach of contract, conversion, and unjust enrichment related to unpaid commissions and fees by B&L. After the case was transferred to binding arbitration, B&L filed Counterclaims against Sigman alleging breach of contract, breach of fiduciary duty, fraud, and interference with contractual relations. One of the allegations by B&L included Sigman's improper referral of the Pasternak matter, upon which B&L sought damages based on the diversion of attorneys' fees from B&L by Datz.

In 2013, arbitrator Harris T. Bock, Esquire found that, but for Sigman's egregious conduct, Sigman would have been awarded a total of $227,350.03 in fees based upon the various cases he generated while employed at B&L. However, B&L was credited with several set-offs which reduced the amount B&L owed to Sigman to $123,942.93. One of the set-offs included a reduction of $43,200 based on the Pasternak referral. B&L was only entitled to a $43,200 set-off instead of the entire $86,400 based on B&L's profit margin of 50%, thereby preventing a windfall to B&L. B&L filed a motion to vacate the arbitration award, which was denied by this court, and the denial was affirmed by the Superior Court.

2

The Office of Disciplinary Counsel also filed a complaint against Sigman in 2012, which resulted in Sigman's suspension from the Bar and the requirement that he pay restitution to B&L. B&L has since been authorized to withdraw from escrow an additional $19,200 that Sigman improperly converted.[1]

The instant action before the court is an outgrowth of the continuing saga of the fractured relationship between Sigman and B&L. In this iteration of the dispute, plaintiff claims that if B&L had represented the client rather than defendants, B&L would have received a higher damage award and therefore was deprived of far higher attorneys' fees. While plaintiff filed this action against defendants prior to the commencement of the Sigman action, plaintiff continues to seek damages from an incident that was resolved in the Sigman action—the Pasternak referral. Despite having been credited with $43,200 and the receipt of an additional $19,200, B&L attempts to squeeze more juice from a different apple. Based upon plaintiff's receipt of damages in the Sigman action, defendants filed the instant motion for summary judgment.

## DISCUSSION

Summary judgment shall be granted when, "there is no genuine issue of any material fact as to a necessary element of the cause of action or defense. . . ." Pa.R.C.P. No. 1035.2. Additionally, "[i]n considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." Fine v. Checcio, 582 Pa. 253, 265, 870 A.2d 850, 857 (2005). Summary judgment may be granted only when the

---

[1] See Defendants' Motion for Summary Judgment. Plaintiff did not dispute that these funds were placed in escrow and made available to them. As such, for purposes of assessing damages, this court accepts this to be true and shall include the $19,200 within its calculation of damages already received by plaintiff.

000744a

judgment is "clear and free from doubt." Checcio, 582 Pa. at 253 (2005) (citing Marks v. Tasman, 527 Pa. 132, 589 A.2d 205, 206 (1991)).

Defendants' motion is mainly premised on the undisputed fact that plaintiff has already recovered damages in connection with the improper referral. Defendants argue that those damages have made B&L whole, and any additional damages would grant plaintiff the benefit of a double recovery. Plaintiff attempts to distinguish the damages it seeks from defendants by characterizing them as lost profits having stemmed from the allegedly inadequate settlement by Datz. B&L also proclaims that because their theory of inadequate settlement damages was asserted prior to the filing of the Sigman complaint and resulting arbitration, B&L should not be precluded from recovering under this theory of damages too. Based on their expert's report, plaintiff values the Pasternak case above $1,000,000, which would have allegedly netted plaintiff substantially more attorneys' fees. See Plaintiff's Answer to the Motion for Summary Judgment, Ex. F.

Plaintiff argues they are entitled to further damages based on the holding in Richette v. Solomon, 187 A.2d 910 (Pa. 1963). In Richette, a railroad worker was injured in line with his employment, and engaged Richette to be his attorney in the matter against the railroad company, and the two signed a power of attorney to that effect. A few days thereafter, the client was coerced and threatened by his employer and union to revoke his power of attorney. With few options, and having almost no education, the client settled the matter with his employer, on his own, without Richette. Richette subsequently filed suit against the individuals who coerced his client to terminate the attorney-client relationship, alleging illegal interference with the contract, and sought compensatory and punitive damages. Richette valued the client's case around $30,000, which would have provided him with $10,000 in attorney's fees. The jury awarded

4

000745a

Richette $10,000 in compensatory damages and $15,000 in punitive damages. On appeal, the Supreme Court of Pennsylvania upheld the compensatory damages verdict, but reduced the punitive damage award.

In order to view Richette as "remarkably similar" and controlling precedent that permits plaintiff to recover additional damages due to an inadequate settlement would require this court to shield its eyes from the glaring differences between the cases. First, Richette involved an existing attorney-client relationship that was forcibly dissolved through the use of coercion and deception. B&L never achieved such a bond with Pasternak, nor was Pasternak separated from her retained attorney. Without question, it is illegal to tortiously interfere with an existing or potential business contract. But interfering with an established attorney-client relationship is substantially more serious than the alleged conduct that interfered with B&L's *possibility* of representing Pasternak. Second, the client in Richette was essentially forced to resolve the dispute without the advice or assistance of counsel, and as a result, was willing to accept an inappropriately paltry settlement. Because the client was not represented, the court was required to speculate how he might have fared had his attorney advocated on his behalf. Pasternak, on the other hand, was represented by Datz. Datz made multiple demands, participated in mediation, and ultimately settled the matter for $216,000. By claiming that Datz is liable to B&L for an inadequate settlement due to the allegedly slipshod quality of his representation, B&L is attempting to pursue what is essentially a legal malpractice case on behalf of Pasternak. It would be improper to permit B&L to step into the shoes of Pasternak and recover those damages, especially in light of Pasternak's declaration that she was "completely satisfied" with defendant's advocacy.[2]

---

[2] This statement was made through Pasternak's attorney in a letter to B&L in 2011. See Defendants' Motion for Summary Judgment, Ex. J.

000746a

Plaintiff has also already been credited with the profit it would have received had it negotiated the same outcome on behalf of Pasternak. Richette, prior to the jury award, had not received any damages on behalf of his client. Only after our Supreme Court upheld the compensatory damages, and reduced the punitive damages, had Richette been credited with the fees he would have received had he represented his former client. Unlike Richette, plaintiff is not before the court empty handed. As detailed above, B&L was able to reduce the amount it was found liable to Sigman by $43,200. Moreover, the funds impermissibly converted by Sigman, $19,200, have been awarded to B&L as well. B&L, having already received a combined $62,400, is now in the same position as Richette *after* the Court upheld the jury award. Richette holds that an attorney is permitted to recover fees, and plaintiff has done so already.

Notwithstanding the differences between the current action and Richette, plaintiff's theory of an inadequate settlement is based on multiple layers of speculation. As described above, plaintiff did not accept Pasternak as a client, nor had Pasternak accepted plaintiff's representation or fee agreement. While plaintiff now views Pasternak's case as a golden egg, it is unknown whether both sides would have reached an agreement in 2007. *If* plaintiff had decided to accept Pasternak as a client, and *if* plaintiff would have successfully negotiated with opposing counsel, it would *still* be impermissibly speculative to determine what amount the parties would have settled on. Moreover, *if* plaintiff were unable to reach an agreement—as Datz had done—and a trial ensued, then there is even less of a basis to calculate the judgment value and plaintiff's fees.[3]

B&L, with all due modesty, describes Datz's advocacy on behalf of Pasternak as "mediocre, at best" and claims, with appropriate bravura, that B&L would have been able to

---

[3] Determining fees based on a trial would simultaneously require the finder of fact to estimate the extensive preparation incurred by B&L leading up to trial, in order to properly ascertain B&L's hypothetical profit, and not just its revenue.

6

secure a substantially higher award. However, plaintiff overlooks a critical component of negotiations—it is the client who decides whether to accept an offer, not the attorney.[4] Pasternak's continued expression of her satisfaction with defendants' representation implies that she was, and is, quite satisfied with the settlement. Because Pasternak had the final say in accepting or rejecting a settlement offer, she might have accepted the same amount irrespective of who represented her, B&L or Datz. Lawyers are to counsel and advise their clients to the best of their ability, and despite plaintiff's insistence that they would have obtained a better result than defendants, the end result could have been the same.[5] In fact, Pasternak might have received a lower award had plaintiff represented her.[6] Determining the outcome of plaintiff's hypothetical representation in comparison to the actual result would be based on absolute conjecture, and as such, plaintiff is unable to properly establish any element of damages.[7]

Finally, permitting this suit to continue would contravene public policy. There is no question that Sigman's conduct was deplorable. The behavior of defendants was also less than exemplary. But the conduct that was meant to be deterred has been deterred, through repayment of fees lost and disciplinary proceedings. Nevertheless, the reprehensible conduct of one does not permit further questionable conduct by another. B&L's actions seem to demonstrate that this matter is about relentlessly pursuing a vendetta and settling a score. Plaintiff, having already received its pound of flesh—to which it was clearly entitled—must move on from this sad tale of double-dealing. As noted by this court in B&L's case against Sigman, awarding plaintiff

---

[4] Pennsylvania's Rules of Professional Conduct states that "[a] lawyer shall abide by a client's decision whether to settle a matter." 204 Pa.Code §1.2.

[5] Perhaps Datz's swift resolution in the matter was precisely what Pasternak desired, even if it was at the expense of a greater settlement amount.

[6] If plaintiff was permitted to continue with this suit, and a jury ultimately determined that the original settlement was too high, would plaintiff be required to return a portion of the fees it has previously recovered? Additionally, if a higher settlement amount were determined by the jury, would the client receive any of the windfall?

[7] This court embraces the axiom that judges are to act as gatekeepers. Even if plaintiff survived the instant Motion, it is highly unlikely that this court would have permitted plaintiff to introduce their expert's valuation of the case due to the same issue of gross speculation.

7

000748a

additional damages "would be redundant punishment and unjustly enrich B&L." Opinion dated August 6, 2013, Control No. 13070540. Nor would the continuation of this case benefit or protect the interests of the one who suffered the greatest harm, Jilene Pasternak.[8] Having received its due, it is time for plaintiff to "let it go."

## CONCLUSION

Plaintiff is not entitled to receive additional damages from defendants based on the awards in previous cases. Wrongdoers have been punished and injured parties have been made whole. For all the aforementioned reasons, defendants' motion for summary judgment is granted.

BY THE COURT:

GLAZER, J.

---

[8] Mrs. Pasternak, through her attorney, has unequivocally rejected plaintiff's request to examine her file and has asked plaintiff to respect her privacy. See Defendants' Motion for Summary Judgment, Ex. J. Plaintiff should do so. It is also difficult to imagine that plaintiff would remit any portion of its damage award to Mrs. Pasternak, the true injured party herein.

8

000749a